TODD A. ROBERTS (SBN 129722)
MARTIN D. DIOLI (SBN 172775)
ROPERS MAJESKI PC
535 Middlefield Road, Suite 245
Menlo Park, CA  94025
Telephone:     650.364.8200
Facsimile:     650.780.1701
Email:          todd.roberts@ropers.com
                    martin.dioli@ropers.com

Attorneys for Defendant
SAFELINE MONITORS, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RADIATION DETECTION COMPANY, a Texas company,<br><br>Plaintiff,<br><br>v.<br><br>SAFELINE MONITORS, LLC, a Connecticut company, and Does 1-5,<br><br>Defendants. | Case No. 3:22-CV-07784-TLT<br><br>**NOTICE OF MOTION AND MOTION BY DEFENDANT SAFELINE MONITORS, LLC FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          March 26, 2024<br>Time:          2:00 p.m.<br>Courtroom 9, 19th Floor<br>The Hon. Trina L. Thompson<br><br>Complaint Filed: February 12, 2022<br>Trial Date: October 15, 2024 |

CRITICAL

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................... 1

II.  STATEMENT OF ISSUES TO BE DECIDED ....................................................... 2

III.  STATEMENT OF FACTS ....................................................................................... 3

IV.  ARGUMENT ........................................................................................................... 5

    A.  Governing Law................................................................................................ 5

    B.  Defendant Did Not Deny Plaintiff The Opportunity To Exercise A Right
        Of First Refusal .............................................................................................. 5

    C.  Defendant Is Entitled To Summary Judgment As To Plaintiff's Second
        Cause Of Action For Breach Of The Implied Covenant OF Good Faith And
        Fair Dealing................................................................................................... 7

    D.  Defendant Is Entitled To Summary Judgment As To Plaintiff's Third
        Cause Of Action For Fraud In The Inducement ...................................... 8

    E.  Plaintiff Is Not Entitled To Damages For Lost Profits Or Revenue .................. 10

V.  CONCLUSION ....................................................................................................... 11

ROPERS
MAJESKI

A Professional Corporation
Menlo Park

NOTICE-MOTION BY SAFELINE MONITORS,
LLC FOR PARTIAL SUMMARY JUDGMENT –
CASE NO. 3:22-CV-07784-TLT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrahim & Sons Enterprises v. Equilon Enterprises, LLC,*
292 F.3d 958 (9th Cir. 2002)............................................................................................6

*Areias v. Applied Underwriters, Inc.,*
No. 21-cv-00023-JST, 2021 WL 9598132 (N.D. Cal. Oct. 19, 2021).........................9

*Beluca Ventures LLC v. Einride Aktiebolag,*
660 F.Supp.3d 898 (N.D. Cal. 2023) ............................................................................8

*Careau & Co. v. Security Pacific Business Credit, Inc.,*
222 Cal.App.3d 1371 (1990)..........................................................................................8

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) .......................................................................................................5

*Food Safety Net Services v. Eco Safe Systems USA, Inc.,*
209 Cal.App.4th 1118 (2012) ......................................................................................10

*Guz v. Bechtel Nat. Inc.,*
24 Cal. 4th 317, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000) ........................................8

*Hartzheim v. Valley Land & Cattle Co.,*
153 Cal.App.4th 383 (2007)......................................................................................5, 6

*Kaiser v. Bowien,*
455 F.3d 1197 (10th Cir. 2006).....................................................................................7

*Landucci v. State Farm Ins. Co.,*
65 F. Supp. 3d 694 (N.D. Cal. 2014) ............................................................................8

*Markborough California, Inc. v. Superior Court,*
227 Cal.App.3d 705 (1991).........................................................................................10

*North Valley Mall, LLC v. Longs Drugs Stores California, LLC,*
27 Cal.App.5th 598 (2018)............................................................................................6

*Price v. Apple,*
No. 21-cv-02846-HSG, 2023 WL 2671378 (N.D. Cal. Mar. 28, 2023) ...................10

*RHUB Commc'ns, Inc. v. Karon,*
No. 16-cv-06669-BLF, 2017 WL 3382339 (N.D. Cal. Aug. 7, 2017).........................9

*Richardson v. La Rancherita, Inc.,*
98 Cal.App.3d 73 (1979)............................................................................................6, 7

ROPERS MAJESKI

A Professional Corporation
Menlo Park

*In re Schaefers*,
623 B.R. 777 (9th Cir. BAP 2020)...................................................................6

*Ser-Bye Corp. v. C.P. & G. Markets*,
78 Cal.App.2d 915 (1947)..............................................................................6, 7

*Tunkl v. Regents of Univ. of Cal.*,
60 Cal.2d 92 (1963) .........................................................................................11

*U.S Cellular Inv. Co. v. GTE Mobilnet, Inc.*,
281 F.3d 929 (9th Cir. 2002)..........................................................................6, 7

*UMG Recordings, Inc. v. Glob Eagle Entm't, Inc.*,
117 F.Supp.3d 1092 (C.D. Cal. 2015).............................................................9

*In re Woldeyohannes*,
No. 3:22-cv-1030 (SRU), 2023 WL 8717014 (D. Conn. Dec. 18, 2023) ................6

**Statutes**

Code §§ 17701.04(a)..........................................................................................6

Conn. Gen. Stat. Ann. §§ 34-243g(a).................................................................6

Governing Law...................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 1 ................................................................................................5

Fed. R. Civ. P. 56(a)..........................................................................................5

ROPERS
MAJESKI

A Professional Corporation
Menlo Park

1 | **NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

2 TO THE PLAINTIFF AND ITS ATTORNEYS OF RECORD:

3 PLEASE TAKE NOTICE that on March 26, 2024, at 2:00 p.m. or as soon thereafter as the

4 matter may be heard in Courtroom 9, 19th Floor of the above-entitled Court, located at 450 Golden

5 Gate Avenue, 19th Floor, San Francisco, California, Defendant Safeline Monitors, LLC

6 ("Defendant") will and hereby does move the Court for summary judgment as follows:

7 1. That Defendant is entitled to partial summary judgment as to Plaintiff's first cause

8 of action for breach of contract on the ground that, based on undisputed evidence and applicable

9 law, defendant did not deny Plaintiff the opportunity to exercise a right of first refusal.

10 2. That Defendant is entitled to summary judgment as to Plaintiff's second cause of

11 action for breach of the implied covenant of good faith and fair dealing on the ground that said

12 cause of action is duplicative of Plaintiff's cause of action for breach of contract.

13 3. That Defendant is entitled to summary judgment as to Plaintiff's third cause of

14 action for fraud in the inducement on the ground that there is no evidence that Defendant made a

15 false promise to Plaintiff.

16 4. That Defendant is entitled to partial summary judgment establishing Plaintiff is not

17 entitled to lost profits damages on the ground that the parties' contract contains a limitation of

18 liability provision that expressly prohibits the recovery of lost profits or revenue in any action in

19 contract or tort.

20 This motion is based on this Notice of Motion and Motion, the following Memorandum of

21 Points and Authorities, the accompanying declarations of Ben Herbstman and Louis Biacchi, the

22 Court's file and records in this action, and on such argument and as may be presented to the Court

23 at the time of the hearing.

24 | **MEMORANDUM OF POINTS AND AUTHORITIES**

25 **I. INTRODUCTION**

26 Plaintiff Radiation Detection Company ("Plaintiff" or "RDC"), in its Complaint for Breach

27 of Contract and Fraud in the Inducement ("Complaint")—which was originally filed in San

28 Francisco Superior Court and subsequently removed to this Court—alleges causes of action for

1  breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud in the

2  inducement against Defendant Safeline Monitors, LLC ("Defendant" or "Safeline"). The

3  gravamen of the Complaint is Safeline's alleged failure to give RDC the opportunity to exercise a

4  purported "right of first refusal" when Ben Herbstman, the owner of Safeline, sold all of his

5  membership interests of Safeline to Mirion Technologies (GSD), Inc. ("Mirion") and Safeline

6  became a wholly-owned subsidiary of Mirion.

7       The right of first refusal, by its terms, would be triggered "[s]hould [Safeline] elect to sell

8  their business while in contract with RDC." As explained herein, the right of first refusal was

9  never triggered because Safeline did not sell its business. As a matter of law, Ben Herbstman's

10  sale of his membership interests of Safeline to Mirion was not a sale by Safeline of its business.

11  Safeline is therefore entitled to summary judgment as to all the causes of action alleged by RDC

12  except for part of the breach of contract claim regarding RDC's confidential and proprietary

13  information.

14       In addition, the contract between RDC and Safeline contains a limitation of liability clause

15  which provides, among other things, that neither party would be liable for damages for loss of

16  profits or revenue, whether in an action for contract or tort. Such clauses are enforceable under

17  California law. RDC should therefore be precluded from recovering any such damages from

18  Safeline.

19  ## II.   STATEMENT OF ISSUES TO BE DECIDED

20       Whether Defendant is entitled to partial summary judgment as to Plaintiff's first cause of

21  action for breach of contract on the ground that, based on undisputed evidence and applicable law,

22  defendant did not deny Plaintiff the opportunity to exercise a right of first refusal.

23       Whether Defendant is entitled to summary judgment as to Plaintiff's second cause of

24  action for breach of the implied covenant of good faith and fair dealing on the ground that said

25  cause of action is duplicative of Plaintiff's cause of action for breach of contract.

26       Whether Defendant is entitled to summary judgment as to Plaintiff's third cause of action

27  for fraud in the inducement on the ground that there is no evidence that Defendant made a false

28  promise to Plaintiff.

ROPERS MAJESKI

A Professional Corporation
Menlo Park

Whether Defendant is entitled to partial summary judgment establishing Plaintiff is not entitled to lost profits damages on the ground that the parties' contract contains a limitation of liability provision that expressly prohibits the recovery of lost profits or revenue in any action in contract or tort.

**III.    STATEMENT OF FACTS**

On July 23, 2007, Safeline was formed as a Connecticut limited liability company by Ben Herbstman. Declaration of Ben Herbstman in Support of Defendant Safeline Monitors, LLC's Motion for Partial Summary Judgment ("Herbstman Decl."), ¶ 3 and Ex. A. From that time until December 1, 2021, Mr. Herbstman was the President, Manager, and sole member of Safeline and responsible for the business and affairs of the company, including its day-to-day operations. *Id.* ¶ 1.

Safeline operates a dosimetry service. *Id.* ¶ 2. A dosimeter is a device for measuring doses of radiation, such as from X-rays. *Id.* The device is a badge that a person would wear. *Id.*

On August 17, 2007, Safeline entered into a Dosimetry Resale Agreement (the "Agreement") with RDC. *Id.* ¶ 4 and Ex. C. Mr. Herbstman signed the Agreement as President of Safeline. *Id.* At that time, RDC was located in Gilroy, California and its President was Barrie Laing. *Id.* Under the Agreement, Safeline was to (and did) market, solicit, and resell RDC's dosimetry reading and reporting services to new customers. *Id.* The initial term of the Agreement was for three years. *Id.* After the initial term, Safeline and RDC would periodically renew the Agreement. *Id.* The renewals typically established a new pricing structure for RDC's dosimetry services but otherwise did not make any material changes to the Agreement. *Id.*

On or about April 10, 2019, Safeline received a Reseller Renewal Letter (the "2019 Renewal") from RDC that included a new price list effective August 1, 2019 through June 30, 2021. *Id.* ¶ 5 and Ex. D.

On November 13, 2020, Mr. Herbstman received an e-mail from Robert Stefani, RDC's Director of Sales, that contained two documents, a Reseller Contract Revision (the "2020 Revision") and a new price list effective November 12, 2020. *Id.* ¶ 6 and Ex. E. Mr. Herbstman signed the 2020 Revision as Safeline's representative and sent it by e-mail to Mr. Stefani on

ROPERS
MAJESKI

A Professional Corporation
Menlo Park

ROPERS MAJESKI

A Professional Corporation

Menlo Park

1  November 16, 2020. *Id.* That same day, Mr. Stefani sent a fully executed copy of the 2020

2  Revision to Mr. Herbstman by e-mail. *Id.* Mr. Stefani signed the 2020 Revision as RDC's

3  representative. *Id.* ¶ 6 and Ex. F.

4         When Mr. Herbstman signed the 2020 Revision on behalf of Safeline, he did not see that it

5  contained the following statement: "Should the Reseller elect to sell their business while in

6  contract with RDC, Reseller agrees to offer RDC the first opportunity to purchase the business and

7  the first right of refusal." *Id.* The e-mails sent by Mr. Stefani did not mention anything about this

8  provision and Mr. Herbstman did not have a discussion with Mr. Stefani or anyone else at RDC

9  regarding the so-called "first right of refusal." *Id.* Mr. Herbstman's primary concern whenever the

10  Agreement was renewed was the price list, and that was his focus when he looked at the 2020

11  Revision. *Id.* In addition, at the time Mr. Herbstman signed the 2020 Revision on behalf of

12  Safeline, he was not thinking about, and had not considered, a sale by Safeline of all or any part of

13  its business. *Id.* Mr. Herbstman did not realize that the 2020 Revision contained a "first right of

14  refusal" until sometime in mid-2022. *Id.*

15         In April 2021, Mr. Herbstman was contacted by Mirion about the possibility of Mirion

16  acquiring Safeline. *Id.* ¶ 7. Prior to April 2021, Mr. Herbstman did not have any discussions with

17  Mirion or anyone else about an acquisition of Safeline. *Id.*

18         In May 2021, Mr. Herbstman signed a Mutual Nondisclosure Agreement ("NDA") with

19  Mirion in connection with the negotiations regarding Mirion's potential acquisition of Safeline. *Id.*

20  ¶ 8.

21         On July 13, 2021, Mr. Herbstman signed a letter of intent ("LOI") with Mirion regarding

22  Mirion's potential purchase of 100% of the outstanding membership interests of Safeline, all of

23  which were owned by Mr. Herbstman. *Id.* ¶ 9 and Ex. G.

24         On December 1, 2021, Mr. Herbstman entered into a Membership Interest Purchase

25  Agreement with Mirion for Mirion's purchase of all the outstanding membership interests of

26  Safeline. *Id.* ¶ 10 and Ex. H.

27         After December 1, 2021, Mr. Herbstman no longer owned any membership interests of

28  Safeline and he was no longer the President or Manager of Safeline. *Id.* ¶ 11.

1    Since Mirion's acquisition of all the membership interests of Safeline, Safeline has

2    operated as a subsidiary of Mirion and has continued to do business with RDC. Declaration of Lou

3    Biacchi in Support of Defendant Safeline Monitors, LLC's Motion for Partial Summary Judgment

4    ("Biacchi Decl."), ¶ 1 and Ex. A.

5    On August 31, 2023, Safeline's name was changed to Dosimetry Badge, LLC. *Id.* ¶ 2 and

6    Ex. B.

7    **IV.   ARGUMENT**

8    A party may move for summary judgment (or partial summary judgment), identifying each

9    claim (or the part of each claim), on which summary judgment is sought. Fed. R. Civ. P. 56(a).

10   "The court shall grant summary judgment if the movant shows that there is no genuine dispute as

11   to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "Summary

12   judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an

13   integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and

14   inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)

15   (quoting Fed. R. Civ. P. 1).

16   **A.   Governing Law**

17   As set forth in the Agreement (at Section 14.7) and admitted by RDC (see Complaint ¶ 5),

18   this dispute is governed by California law.

19   **B.   Defendant Did Not Deny Plaintiff The Opportunity To Exercise A Right Of
First Refusal**

20

21   RDC alleges that Safeline breached the Agreement, as amended by the 2020 Revision, "by

22   accepting an offer and being sold to [Mirion] without informing RDC and denying RDC the

23   opportunity to exercise its right of first refusal. Complaint ¶¶ 41, 43.

24   A right of first refusal, also called a preemptive right, is the conditional right to acquire

25   property, depending on the owner's willingness to sell. *Hartzheim v. Valley Land & Cattle Co.*,

26   153 Cal.App.4th 383, 389 (2007). The holder of the right merely has the preference to purchase

27   the property over other purchasers if the owner elects to sell the property; the right does not

28   become an option to purchase until the owner of the property voluntarily decides to sell the

ROPERS
MAJESKI

A Professional Corporation
Menlo Park

1   property and receives a bona fide offer to purchase it from a third party. *Id.* The contract terms

2   dictate the particular circumstances that will trigger the right. *Id*.

3       Here, the purported right of first refusal would be triggered "[s]hould the Reseller elect to

4   sell their business while in contract with RDC." That did not happen. The "Reseller" is Safeline

5   and its business is selling dosimetry services. Ben Herbstman was not the "Reseller" and the sale

6   of his membership interests of Safeline was not the sale of Safeline's business. Following the

7   transfer of the membership interests to Mirion, Safeline continued to own its business.

8       A limited liability company, like a corporation, is recognized as a legal entity separate and

9   apart from its members (i.e. its owners). See Cal. Corps. Code §§ 17701.04(a) ("A limited liability

10  company is an entity distinct from its members."), 17701.05 ("a limited liability company … shall

11  have all the powers of a natural person in carrying out its business activities"); Conn. Gen. Stat.

12  Ann. §§ 34-243g(a) ("A limited liability company is an entity distinct from its member or

13  members."), 34-243h(a) ("A limited liability company has … the power to do all things necessary

14  or convenient to carry on its activities and affairs."); *Abrahim & Sons Enterprises v. Equilon*

15  *Enterprises, LLC*, 292 F.3d 958, 962 (9th Cir. 2002) ("Members own and control most LLCs, yet

16  the LLCs remain separate and distinct from their members. Indeed, the separate and distinct nature

17  of LLCs is their reason for existence."); *In re Schaefers*, 623 B.R. 777, 783 (9th Cir. BAP 2020)

18  ("limited liability company members have no interest in the company's assets"); *In re*

19  *Woldeyohannes*, No. 3:22-cv-1030 (SRU), 2023 WL 8717014, at *7 (D. Conn. Dec. 18, 2023)

20  ("However, even if the Debtor was a member, or the sole member of the LLC at the time of the

21  sale, a limited liability company, under Connecticut Law, is "an entity distinct from its member or

22  members," Conn. Gen. Stat. Ann. § 34-243g(a). Accordingly, it appears that the Debtor did not

23  own the specific assets of [the LLC] that were identified in the Sale Order.").

24      Under California law, an individual stockholder selling their shares is not the same thing as

25  a corporate entity selling its business or its assets. *U.S Cellular Inv. Co. v. GTE Mobilnet, Inc*., 281

26  F.3d 929, 935 (9th Cir. 2002) (citing *Richardson v. La Rancherita, Inc*., 98 Cal.App.3d 73, 79

27  (1979) and *Ser-Bye Corp. v. C.P. & G. Markets*, 78 Cal.App.2d 915, 918-921 (1947); see *North*

28  *Valley Mall, LLC v. Longs Drugs Stores California, LLC*, 27 Cal.App.5th 598, 602 (2018)

ROPERS MAJESKI
A Professional Corporation
Menlo Park

1  (rejecting argument that reverse triangular merger resulted in transfer of target corporation's

2  assets). As explained by the Ninth Circuit:

3          The analysis in *Ser–Bye* and *Richardson* hinges not on the nature of
         the specific assets involved in the transfer, but on the nature of the
4          entity owning the assets and with whom the contract was made. That
         is, the California courts in these cases recognized that when a party
5          enters into an agreement with a corporation, it is presumed to do so
         with an understanding of the nature of the corporate form. In
6          effectuating the reasonable expectation of the parties, the law
         presumes that if the parties intend to limit the corporation's ability to
7          engage in a legitimate and normal corporate transaction, such a
         limitation will be specified.

8

9  *U.S Cellular,* 281 F.3d at 935. The distinction between a corporation and its assets and the narrow

10  interpretation of right of first refusal clauses have led most courts considering the question to hold

11  that the transfer of corporate stock does not trigger a right of first refusal that applies by its text to

12  the assets of the corporation. *Kaiser v. Bowien*, 455 F.3d 1197, 1208 (10th Cir. 2006).

13          The result here should be no different. RDC seeks to conflate the individual shareholder,

14  Mr. Herbstman, with the Safeline corporate entity. At most, RDC made an agreement with

15  Safeline LLC about the entity selling its corporate assets. RDC did not make any agreement with

16  Mr. Herbstman himself about Mr. Herbstman's stock ownership. RDC, as the sole author of the

17  November 2020 renewal document, could have included language encompassing Mr. Herbstman's

18  individual stock ownership within their desired "right of first refusal." RDC did not include any

19  such language. RDC instead made an agreement only with Safeline LLC, relating only to

20  Safeline's corporate assets. As a matter of law, the sale by Mr. Herbstman of his shares to Mirion

21  did not trigger any "right of first refusal" that existed between RDC and Safeline LLC regarding

22  Safeline's corporate assets. Safeline LLC was, and still is now, the owner of its business and its

23  corporate assets.

24      **C.    Defendant Is Entitled To Summary Judgment As To Plaintiff's Second Cause
             Of Action For Breach Of The Implied Covenant OF Good Faith And Fair
25             Dealing**

26          RDC's cause of action for breach of the implied covenant of good faith and fair dealing is

27  based on the same breach alleged in its cause of action for breach of contract and therefore fails as

28  a matter of law.

4881-2374-4417

NOTICE-MOTION BY SAFELINE MONITORS,
LLC FOR PARTIAL SUMMARY JUDGMENT –
CASE NO. 3:22-CV-07784-TLT

1
2
3
4
5
6
7
8

RDC's breach of contract cause of action alleges that "Safeline breached the Agreement by accepting an offer and being sold to [Mirion] without informing RDC and denying RDC the opportunity to exercise its right of first refusal." Complaint ¶ 43. RDC's breach of the implied covenant cause of action for alleges that "Safeline knowingly interfered with RDC's right of first refusal under the Agreement by failing to inform RDC of Mirion's offer to purchase Safeline and by completing the sale without providing RDC an opportunity to exercise its rights." Complaint ¶ 49. Because the two causes of action are based on the same breach, the breach of the implied covenant cause of action is superfluous:

9
10
11
12
13
14
15
16

> "[A]lthough the California Supreme Court has held that a plaintiff may bring both a breach of contract claim and a claim for breach of the implied covenant of good faith and fair dealing, the Supreme Court has made clear that when both causes of action cite the same underlying breach, the implied covenant cause of action will be superfluous with the contract cause of action." *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014) (emphasis in original) (citing *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 327, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000)). *Guz* explained that "where breach of an actual term is alleged, a separate implied covenant claim, based on the same breach, is superfluous." *Guz*, 24 Cal. 4th at 327, 100 Cal.Rptr.2d 352, 8 P.3d 1089. In other words, a claim alleging breach of the implied covenant of good faith and fair dealing must be based on a different breach than the breach of contract claim. *Landucci*, 65 F. Supp. 3d at 716.

17
18
19
20
21
22

*Beluca Ventures LLC v. Einride Aktiebolag*, 660 F.Supp.3d 898, 911 (N.D. Cal. 2023); see *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1395 (1990) ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.").

23
24

For the foregoing reasons, Safeline is entitled to judgment as a matter of law as to RDC's second cause of action for breach of the implied covenant of good faith and fair dealing.

25
26

**D.    Defendant Is Entitled To Summary Judgment As To Plaintiff's Third Cause Of Action For Fraud In The Inducement**

27
28

RDC's cause of action for fraud in the inducement attempts to allege promissory fraud. The alleged false promise is the purported right of first refusal in the 2020 Revision, which states:

ROPERS
MAJESKI

A Professional Corporation
Menlo Park

1  "Should [Safeline] elect to sell their business while in contract with RDC, [Safeline] agrees to

2  offer RDC the first opportunity to purchase the business and the right of first refusal." Complaint

3  ¶ 52. RDC alleges, on information and belief, that Safeline "knew that this representation was

4  untrue and that Safeline had no intention of offering RDC an opportunity to purchase its business."

5  Complaint ¶ 53. RDC further alleges, on information and belief, that Safeline "offered RDC the

6  right of first refusal to induce RDC into agreeing to the 2020 Amendment and continuing

7  Safeline's exclusive resell relationship." Complaint ¶ 54.

8      A plaintiff asserting a claim for promissory fraud must plead and prove that the defendant

9  made a promise to the plaintiff that the defendant had no intention of performing. *RHUB*

10  *Commc'ns, Inc. v. Karon*, No. 16-cv-06669-BLF, 2017 WL 3382339, at *11 (N.D. Cal. Aug. 7,

11  2017); *UMG Recordings, Inc. v. Glob Eagle Entm't, Inc.*, 117 F.Supp.3d 1092, 1109 (C.D. Cal.

12  2015). Nonperformance by the party making the promise is a required element of a claim for

13  promissory fraud. *Areias v. Applied Underwriters, Inc.*, No. 21-cv-00023-JST, 2021 WL 9598132,

14  at *8 (N.D. Cal. Oct. 19, 2021). However, nonperformance alone is insufficient to establish

15  fraudulent intent. *Id.*

16      For the reasons set forth at length above, RDC cannot prove nonperformance by Safeline.

17  The purported right of first refusal could only have been triggered if Safeline sold its business. The

18  undisputed fact is that Safeline did not sell its business. Therefore, there can be no claim of

19  promissory fraud as alleged by RDC.

20      There is also is no evidence of fraudulent intent. In fact, the evidence is to the contrary.

21  Ben Herbstman did not even realize that the 2020 Revision contained a right of first refusal until at

22  least a year and a half after he sold his memberships interests of Safeline to Mirion. Herbstman

23  Decl. ¶ 6. In addition, there is no evidence that Safeline offered RDC the right of first refusal to

24  induce RDC into agreeing to the 2020 Revision. Rather, RDC prepared and sent the 2020 Revision

25  to Safeline without any prior notice or discussion regarding the right of first refusal. *Id.* ¶ 6 and

26  Exs. E-F. At the time, the relationship between Safeline and RDC was continuing under the 2019

27  Renewal, which included a price list that was valid for another six months or so. *Id.* ¶ 5 and Ex. D.

28      For the foregoing reasons, Safeline is entitled to judgment as a matter of law as to RDC's

ROPERS MAJESKI | A Professional Corporation | Menlo Park

1    third cause of action for fraudulent in the inducement.

2          **E.**      **Plaintiff Is Not Entitled To Damages For Lost Profits Or Revenue**

3          The Agreement (at Section 9.2 on page 6 thereof) contains the following limitation of

4    liability clause:

5                     IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY
                      INDIRECT, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL
6                     DAMAGES, INCLUDING LOSS OF PROFITS, REVENUE,
                      DATA, OR USE, INCURRED BY EITHER PARTY OR ANY
7                     THIRD PARTY, WHETHER IN AN ACTION IN CONTRACT OR
                      TORT OR BASED ON A WARRANTY, EVEN IF THE OTHER
8                     PARTY OR ANY OTHER PERSON HAS BEEN ADVISED OF
                      THE POSSIBILITY OF SUCH DAMAGES. COMPANY'S
9                     LIABILITY FOR DAMAGES UNDER THIS AGREEMENT
                      SHALL IN NO EVENT EXCEED THE AMOUNTS ACTUALLY
10                    PAID BY RESELLER TO COMPANY UNDER THIS
                      AGREEMENT.
11

12   See Herbstman Decl., Ex. C.

13         Limitation of liability clauses "'have long been recognized as valid in California.'" *Food*

14   *Safety Net Services v. Eco Safe Systems USA, Inc.*, 209 Cal.App.4th 1118, 1126 (2012) (quoting

15   *Markborough California, Inc. v. Superior Court*, 227 Cal.App.3d 705, 714 (1991)). With respect

16   to claims for breach of contract, limitation of liability clauses are enforceable unless they are

17   unconscionable, that is, the improper result of unequal bargaining power or contrary to public

18   policy. *Id*.

19         Here, there is no evidence that RDC had unequal bargaining power. If anything, Safeline,

20   as a reseller of RDC's dosimetry reading and reporting services, had far less bargaining power

21   than RDC. This is plainly evidenced by the limitation of liability provision itself, which further

22   limits RDC's damages under the Agreement to the amounts actually paid by Safeline to RDC

23   under the Agreement.

24         In determining whether the limitation of liability clause is contrary to public policy, "courts

25   consider such factors as whether the contract 'concerns a business of a type generally thought

26   suitable for public regulation' and whether '[t]he party seeking exculpation is engaged in

27   performing a service of great importance to the public, which is often a matter of practical

28   necessity for some members of the public.'" *Price v. Apple*, No. 21-cv-02846-HSG, 2023 WL

ROPERS
MAJESKI

A Professional Corporation
Menlo Park

1  2671378, at *4 (N.D. Cal. Mar. 28, 2023) (quoting *Tunkl v. Regents of Univ. of Cal.*, 60 Cal.2d 92,

2  98-99 (1963)). There are no such public policy considerations implicated here.

3          The limitation of liability clause in the Agreement prevents either party from being liable

4  for lost profits or revenue, "whether in an action in contract or tort." RDC should therefor be

5  precluded from recovering such damages against Safeline in this action.

6  **V.      CONCLUSION**

7          For all the foregoing reasons, Defendant's motion for partial summary judgment should be

8  granted in its entirety, and the Court should enter an order (1) establishing that Defendant did not

9  breach the Agreement by denying Plaintiff the opportunity to exercise a right of first refusal,

10 (2) that there is no genuine dispute as to any material fact and Defendant is entitled to judgment as

11 a matter of law as to Plaintiff's second cause of action for breach of the implied covenant of good

12 faith and fair dealing, (3) that there is no genuine dispute as to any material fact and Defendant is

13 entitled to judgment as a matter of law as to Plaintiff's third cause of action for and fraud in the

14 inducement, and (4) establishing that Plaintiff is not entitled to recover damages for lost profits or

15 revenue.

16 Dated: February 15, 2024                    ROPERS MAJESKI PC

17

18                                      By: _____

19                                          TODD A. ROBERTS
                                            MARTIN D. DIOLI
20                                          Attorneys for Defendant
                                            SAFELINE MONITORS, LLC

21

22

23

24

25

26

27

28

ROPERS
MAJESKI

A Professional Corporation
Menlo Park